UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-CR-60204-COHN/SELTZER

UNITED STATES OF AMERICA,

vs.

DELVIN WOODS,

　　　　Defendant.
_____/

## REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS (DE 26)

THIS CAUSE is before the Court on the Motion to Suppress Physical Evidence and Statements (DE 26), filed by Delvin Woods (hereinafter, "Defendant"), and was referred to United States Magistrate Judge Barry S. Seltzer pursuant to 28 U.S.C. § 636 and the Magistrate Rules of the Local Rules of the Southern District of Florida (DE 27). For the reasons set forth below, the undersigned recommends that the Motion be DENIED.

I.　　BACKGROUND

　　A.　　Procedural Posture

On August 23, 2011, a federal grand jury returned an Indictment (DE 12) charging Defendant with one count of possession of firearms and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) and 2.

On October 20, 2011, Defendant filed a Motion to Suppress Physical Evidence and Statements (DE 26). Defendant seeks "to suppress physical evidence and statements obtained as a result of an illegal search of [his] residence and the ensuing unlawful interrogation." Motion at 1 (DE 26). On October 27, 2011, the Government filed its Response to Defendant's Motion to Suppress Evidence and Statements (DE 29). And on

November 2, 2011, the undersigned conducted a hearing, receiving testimony from Broward Sheriff's Office ("BSO") Detective Nicholas Romano (hereinafter, "the affiant") and hearing argument of counsel.

The matter is now ripe for decision.

B.   The Application and Affidavit and the Search Warrant

On August 9, 2011, a BSO affiant sought from a state court judge a warrant to search premises at which he believed marijuana sales had occurred; he ultimately obtained two warrants. The first Search Warrant – attached as Ex. A to the Motion (DE 26-1) and as Ex. 1 to the Response (DE 29-1) – contained a "Description of Premises and Curtilage" section that identified "[t]he structure to be searched [a]s a single-family residence . . . located at 186 S.W. 2nd Avenue, Deerfield Beach, Florida." The supporting Affidavit and Application contained a "Description of Premises and Curtilage to be Searched" section that similarly identified "[t]he structure to be searched [a]s a single-family residence . . . located at 186 S.W. 2nd Avenue, Deerfield Beach, Broward County, Florida." Id. And the "Probable Cause" section of that Affidavit and Application identified the search residence by address one time; it recited that a confidential informant ("CI") had "agreed to purchase cannabis from within the aforementioned premise, 186 S.W. 2nd Avenue, . . ." Id.

Minutes after obtaining the first Search Warrant and then forwarding it to BSO, the affiant was notified by his agency that the correct address of the residence to be searched is not 186 S.W. 2nd Avenue, but 186 S.W. 1st Court. The search residence – 186 S.W. 1st Court – actually sits on the corner of S.W. 1st Court and S.W. 2nd Avenue. After receiving this notification, the affiant got on a courthouse computer and revised the Description of the Premises to be Searched section both in the Affidavit and Application and in the

Search Warrant; he changed the address from 186 S.W. 2nd Court to 186 S.W. 1st Court (Deerfield Beach, Florida). But in the Probable Cause section of the Affidavit and Application, the affiant neglected to change the address in the one instance that it is identified by name; he inadvertently left it as 186 S.W. 2nd Avenue.

The second Search Warrant[1] – attached as Ex. B to the Motion (DE 26-2) and as Ex. 2 to the Response (DE 29-2) – contains a "Description of Premises and Curtilage" section that identifies "[t]he structure to be searched [a]s a single-family residence . . . located at 186 S.W. 1st Court, Deerfield Beach, Florida." The supporting Affidavit and Application contains a "Description of Premises and Curtilage to be Searched" section that similarly identifies "[t]he structure to be searched [a]s a single-family residence . . . located at 186 S.W. 1st Court, Deerfield Beach, Broward County, Florida." Id. Moreover, both the Affidavit and Application and the Search Warrant itself set forth identical and detailed descriptions of the premises to be searched:

> The structure to be search is a single-family residence made of CBS construction, located at 186 S.W. 1st Court, Deerfield Beach, Broward County, Florida. The structure is the 1st structure east of S.W. 2nd Avenue on the south side of S.W. 1st Court, when traveling east bound from the intersection of S.W. 2nd Avenue and S.W. 1st Court. The residence to be searched is white with green trim and brown roof. The front door is white with green trim and located on the west side of the structure. The numerals "186" are black and written on a white mail box post. The mail box is located at next to the roadway. The numerals "150" are black and also painted on the mail box post. The numerals "150" refer to 150 S.W. 2nd Avenue which is the structure's situs.

---

[1] The second Search Warrant was the only search warrant actually executed in this case. The pending Motion challenges the fruits of this second Search Warrant, as those fruits gave rise to the instant Indictment.

3

Description of Premises and Curtilage to be Searched, Affidavit and Application for Search Warrant and Description of Premises and Curtilage, Search Warrant, Ex. B to Government's Response (DE 29-2).

In addition, the (second) Affidavit and Application contains a "Probable Cause" section, which is identical to that in the (first) Affidavit and Application. And therein lies the error giving rise to the Motion. As the affiant acknowledged, in the Probable Cause section he neglected to change the address in the one instance that it is identified by name; although he should have changed it to 186 S.W. 1st Court, he inadvertently left it as 186 S.W. 2nd Avenue. In its entirety – with references to the search premises highlighted by the undersigned – the Probable Cause section states:

> Your Affiant has been duly appointed Deputy Sheriff for the Broward Sheriff's Office for approximately 9 years. Your Affiant is currently assigned to the Deerfield Beach Selective Enforcement Team. During the noted period your Affiant has received training in the identification, detection and enforcement of narcotics and has made numerous narcotic related arrests.
>
> AFFIANT believes and has probable cause to believe the aforesaid property may be found at the <u>above described premise</u> and curtilage for the following reasons:
>
> Between the dates of August 1st and August 5th, 2011 your Affiant, Detective Nicholas Romano met with a confidential informant (herein after referred to as C.I.) who is documented with the Broward Sheriff's Office. The C.I. advised that cannabis was actively being sold from the <u>residence to be searched</u> by a black male using the name "King". The C.I. agreed to purchase cannabis from within the <u>aforementioned premise, 186 S.W. 2nd Avenue</u>, under controlled conditions. Your Affiant searched the C.I. and the C.I.'s mode of transportation and both were found to be absent of any monies, narcotics or other contraband articles. The C.I. was then given Official Investigative Funds, specifically for the purpose of purchasing illegal narcotic substances (cannabis),

4

from within the <u>premise to be searched</u>. The C.I. then traveled to the <u>aforementioned location</u>. Your Affiant was in a strategic vantage point for observation. Pursuant to instructions, the C.I. traveled directly to the <u>premise to be searched</u>. Upon arriving, a black male exited the front door of the residence, met the C.I. and conducted a hand to hand transaction with the C.I. This transaction took place in the backyard. The C.I. then left the residence and traveled directly back to your Affiant at a pre-determined location, to surrender the narcotics. Upon arriving at the pre-determined location, physical contact was made with the C.I. The C.I. surrendered one bag of suspect cannabis. At this time your Affiant searched the C.I. and the C.I.'s mode of transportation. Both were absent of any contraband articles including the Official Investigative Funds previously issued.

The C.I. advised that "King" walked out of the house and sold the C.I. the cannabis. The C.I. also advised that "King" told the C.I. to come back if they needed more. During the aforementioned course of events, the C.I. made no stops and did not come in contact with anyone other than the black male involved in the transaction, at <u>the premise to be searched</u>. The C.I. has been proven to be truthful and reliable.

A field test was conducted on the suspect cannabis with said test proving positive for the presence of THC.

"King" was identified as Delvin Woods (05/01/76). Woods was incarcerated for 2nd degree murder in 1995 for 15 years. Woods has prior arrests for possession of cannabis and firearm by a convicted felon.

WHEREFORE your Affiant hereby makes application for a Search Warrant authorizing the Affiant and the Sheriff and/or Deputy Sheriff's of Broward County, Florida, with proper and necessary assistance, to search the <u>above described premise</u>, curtilage, and you may also search those who shall be connected with or suspected of being connected with the laws being violated, in the daytime/nighttime or on Sunday, and to seize any and all of the aforesaid property found by virtue of such Search Warrant and to bring said property before me, or to the Broward Sheriff's Office Crime Laboratory for analysis, and to list the property seized on a return and inventory, to be filed within this judicial circuit within ten days of this date.

Probable Cause section, Affidavit and Application for Search Warrant (DE 29-2) (emphasis added).

Within fifteen to thirty minutes of having secured the first Search Warrant, the affiant had returned to the same issuing judge with the revised Affidavit and Application and the revised Search Warrant. The affiant explained to the issuing judge that he (the affiant) had mistakenly provided an incorrect address for the search premises in the initial Affidavit and Application and the initial Search Warrant, but that he had corrected the error in the revised documents he was providing for the judge's consideration. The judge then reviewed the revised Affidavit and Application and Search Warrant, and he signed the revised (or second) Search Warrant. In issuing the second Search Warrant, the judge referenced the facts set forth in the accompanying Affidavit, incorporated those facts into Warrant, and found probable cause to issue the Warrant:

> The Affiant has stated under oath the facts, which the Affiant belief is based. These facts are set out on the Affiants' GENERAL AFFIDAVIT and APPLICATION of SEARCH WARRANT, and I now incorporate these facts and make them a part of this SEARCH WARRANT. <u>I find probable cause to issue this Search Warrant</u>.

Search Warrant, Ex. 2 to Response (DE 29-2) (emphasis added).

On August 11, 2011, BSO deputies executed the second Search Warrant at the 186 S.W. 1st Court property. In the southeast bedroom, they located body armor, credit cards, documents in Defendant's name, a metal box containing money, and a backpack. Within the backpack, they discovered two loaded firearms, one of which had been reported stolen, and documents bearing Defendant's name. In the backyard, they discovered another loaded firearm in a bag with two black ski masks. Also in the backyard, they found a box

containing crack cocaine and powder cocaine, a box containing crack cocaine, and a can containing marijuana and oxycodone pills.

Immediately prior to the search, BSO read Defendant a copy of the search warrant and advised him of his <u>Miranda</u> rights. After executing the warrant, BSO placed Defendant under arrest and transported him to the district office. At the BSO office, Defendant provided a post-<u>Miranda</u> statement. He admitted that he lived at the residence that had just been searched, that he had purchased the firearms found at the residence from random individuals on the street, and that he had purchased the body armor at a gun show. He explained that he had purchased the firearms and the armor for his protection. Defendant also hand wrote an affidavit admitting to these purchases.

## II.   <u>MOTION TO SUPPRESS</u>

Defendant argues that the warrant application is devoid of any probable cause to support a search of the 186 S.W. 1st Court property because the Probable Cause section (of the second Affidavit and Application) identifies "the aforementioned premise" as 186 S.W. 2nd Avenue:

> Thus, from the affidavit the only probable cause that exists to support any search is only for that premises located at 186 S.W. 2nd Ave. There is not a scintilla of factual support to suggest any criminal activity was occurring at Woods residence, 186 S.W. 1st Court, Deerfield Beach, which is where the warrant authorized a search and in fact where the search occurred and where the three firearms and ammunition, which are the basis of the indictment, were located.

Motion at 3 (DE 26).

In response, the Government explains that in the first Application and Affidavit "BSO erroneously identified the street address of the residence as 186 S.W. 2nd Avenue,

7

Deerfield Beach, Florida," but that "[t]he actual street address of the residence is 186 S.W. 1st Court, Deerfield Beach, Florida." Government's Response at 2 (DE 29). According to the Government, when the BSO affiant realized that the street address provided in the first Application and Affidavit and the first Search Warrant was incorrect, he returned to the same state court judge who had signed the first Warrant with a revised Affidavit and Application and a revised Search Warrant, which the judge reviewed and signed. Id.

Defendant's Motion and the Government's Response present two issues: 1) does the (second) Affidavit and Application contain probable cause to support the issuance of the (second) Search Warrant, and 2) if not, are the fruits of the subsequent search admissible nonetheless?

III.   THE LAW

    A.   Probable Cause to Support Issuance of Search Warrant

The Fourth Amendment to the United States Constitution states:

> The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and <u>no warrants shall issue, but upon probable cause</u>, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV (emphasis added). Probable cause will be found to support a warrant application when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). The Supreme Court has stated that "probable cause deals 'with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Id. at 241 (citation omitted).

Accordingly, courts considering the sufficiency of warrant applications do not read supporting affidavits in a hypertechnical manner. "[R]ather, a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to [judges] in their probable cause determinations." United States v. Miller, 24 F.3d 1357, 1361 (11th Cir. 1994). Consistent with the general preference for warrant-based searches, an issuing judge's probable cause determination "is to be given great deference and is conclusive, if reasonable, absent arbitrariness." United States v. Sweeting, 933 F.2d 962, 964 (11th Cir. 1991). Indeed, a "[judge's] finding of probable cause should be sustained in doubtful or marginal cases." United States v. Scott, 555 F.2d 522, 527 (5th Cir. 1977).

Consistent with the rule that affidavits for search warrants be interpreted in a common sense and realistic manner, courts have routinely upheld warrants supported by affidavits that misidentify the street address of the place to be searched. By way of example, in United States v. Jones, 208 F.3d 603 (7th Cir. 2000), the Seventh Circuit rejected – characterizing as "specious at best" – a defendant's argument that an affidavit's typographical error as to the address of the search premises renders the warrant facially defective. Id. at 608. The Jones court noted that the search warrant itself had listed the correct address to be searched and that the warrant "provided other, ample, descriptions of the location of [the defendant's] house," including its "relation to intersecting and adjoining streets and neighboring houses." Id.

Similarly, in United States v. Stonerook, 134 Fed. Appx. 982 (8th Cir. 2005), the Eighth Circuit rejected a defendant's argument concerning the validity of a warrant where the supporting affidavit had erroneously located his home on the south side, rather than

9

the north side, of the street. Id. at 984. The Stonerook court noted that "[t]he warrant affidavit accurately described [the defendant's] house, and there was no similar property on the south side of the street. In addition, the street address was correct in both the warrant and the affidavit." Id. In instructive language, the Stonerook court declared: "Where it is clear which property was intended in the affidavit, a word processing error does not render a warrant invalid." Id.

In United States v. Winkler, No. 3:08-CR-14, 2008 WL 5136463 (E.D. Tenn. Dec. 4, 2008), a district court also rejected a defendant's argument that typographical errors in a supporting affidavit invalidated the warrant. More specifically, the court rejected the defendant's argument that probable cause was lacking because the underlying affidavit referred to facts occurring at "321 Atkins Road," whereas the defendant actually lived at "231 Atkins Road." Id. at *4. In arriving at its decision, the court observed that the search warrant itself listed the correct address of "231 Atkins Road" and that hearing testimony revealed that the "321 Atkins Road" address in the affidavit was merely a typographical error. The court also noted the Supreme Court's guidance that affidavits for search warrants be tested and interpreted in a "commonsense and realistic fashion," for "[t]hey are normally drafted by nonlawyers in the midst and haste of a criminal investigation." Id. (quoting United States v. Ventresca, 380 U.S. 102, 108 (1965)). The Winkler court then concurred with the magistrate judge's findings that the search warrant was supported by probable cause. See 2008 WL 5136463, at *4; see also United States v. Hole, 564 F.2d 298, 302 (9th Cir. 1977) (holding that "innocent misstatements, even if material, if made in good faith and neither intentionally nor recklessly, will not vitiate an otherwise sufficient affidavit submitted by a government agent in support of a request for a search warrant.").

Yet, even where no probable cause can be found to have supported the issuance of a search warrant, suppression of any subsequently seized evidence is not necessarily mandated.

B. "Good Faith" Exception to Warrant Requirement

In United States v. Leon, 468 U.S. 897 (1984), the Supreme Court recognized a "good faith" exception to the exclusionary rule for searches conducted pursuant to warrants. The Leon Court held that evidence need not be suppressed when police obtain the evidence through objective, good faith reliance on an initially valid warrant that is later found to lack probable cause. Id. at 920-21; accord United States v. Lora-Solano, 330 F.3d 1288, 1295 (10th Cir. 2003) (holding that even if mistaken address on warrant rendered it invalid, the good faith exception of Leon would apply; "[W]hen police officers act in good faith and reasonable reliance on a search warrant, the evidence obtained during the search should not be suppressed even if the warrant was lacking in probable cause.") (citations and internal quotations omitted); United States v. Shugart, 117 F.3d 838, 843-44 (5th Cir. 1997) (holding that certain "technical errors" in "applications for search warrants do not undermine" the objectively reasonable good faith reliance of law enforcement); United States v. Gilbert, No. IP 02-178-01-CR-B/F, 2003 WL 1712565, (S.D. Ind. March 14, 2003) ("Even if we were to conclude that the search warrant . . . did not demonstrate probable cause to search Defendant's residence, the suppression of the evidence is not an appropriate remedy if the officers conducting the search acted in 'objectively reasonable reliance' on the warrant's validity.").

Leon, however, provided four exceptions to this rule, situations in which suppression would nonetheless be appropriate: (1) "if the magistrate or judge in issuing a warrant was

11

misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) "where the issuing magistrate wholly abandoned his judicial role"; (3) where the "warrant [is] based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'"; and (4) where "a warrant [is] so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." Leon, 468 U.S. at 923.

IV.   ANALYSIS

   A.   Probable Cause Supports Issuance of Search Warrant for 186 S.W. 1st Court

The Affidavit and Application for Search Warrant contains facts that establish a fair probability of finding contraband at the 186 S.W. 1st Court address. The Probable Cause section of the Affidavit and Application recounts that during the week of August 1, 2011, a documented CI had told the BSO affiant that Defendant was selling marijuana from the "residence to be searched," which had previously been identified in the Description of Premises and Curtilage to be Searched section of the Affidavit and Application as "186 S.W. 1st Court." See Description of Premises and Curtilage to be Searched, Affidavit and Application for Search Warrant, Ex. 2 to Response (DE 29-2). The Probable Cause section next recites that BSO gave money to the CI to purchase marijuana from Defendant "from within the premise to be searched," which, again, had previously been identified in the Affidavit and Application as "186 S.W. 1st Court." Id. After receiving money from BSO, the CI traveled "the aforementioned location" – "the aforementioned location" being "the premise to be searched" – where he purchased marijuana from Defendant; once again, the "premises to be searched" had previously been identified in the Affidavit and Application as "186 S.W. 1st Court." Id. Immediately before entering and exiting the residence, the CI

was under BSO surveillance. Following the controlled purchase, the CI met with BSO and turned over the marijuana purchased from Defendant, which tested positive for marijuana. Finally, the Probable Cause section makes clear that during the entire course of events, the CI made no stops and did not come in contact with anyone other than Defendant, "at the premise to be searched," which, once again, had been previously identified in the Affidavit and Application as "186 S.W. 1st Court." <u>Id.</u>

The Probable Cause section does contain one instance in which the street address is misidentified as 186 S.W. 2nd Avenue, rather than as 186 S.W. 1st Court. This isolated error, however, does not vitiate probable cause. First, by its own (contradictory) terms, the sentence in which the error appears suggests a typographical error: "The C.I. agreed to purchase cannabis from within the <u>aforementioned premise</u>, 186 S.W. 2nd Avenue, under controlled conditions." (emphasis added). Yet, the only premise that had previously been mentioned – "aforementioned" – in the Affidavit and Application is 186 S.W. 1st Court. Second, because the sole reason the BSO affiant returned to the issuing judge with the revised Affidavit and Application and the revised Search Warrant was to change the street address of premises to be searched from 186 S.W. 2nd Avenue to 186 S.W. 1st Court, it is clear that the lone remaining reference to 186 S.W. 2nd Avenue was an oversight. Third, even if the entire sentence containing the misidentified address were ignored, there would still be abundant facts from which the reviewing judge could find probable cause to support the search of 186 S.W. 1st Court. <u>See</u> <u>Winkler</u>, 2008 WL 5136463, at *4 ("Applying the 'commonsense and realistic rule' and <u>ignoring these typographical errors</u>, the court then looks to see whether the affidavit established probable cause for the search warrant to issue.") (emphasis added). Fourth, the Search Warrant itself lists the correct address of

the residence to be searched as "186 S.W. 1st Court". See id. (observing that the search warrant itself listed the correct address of "231 Atkins Road").  Fifth, the Warrant includes a finding by the issuing judge that the affiant's sworn statement of facts, which the judge expressly incorporated into the Warrant, provide probable cause for the Search Warrant to issue.  Sixth, the first page of the Affidavit and Application also lists the correct street address of the residence to be searched as "186 S.W. 1st Court".  Seventh, the officer in charge of executing the warrant had personal knowledge of the correct location of the residence and knew that the CI had purchased marijuana from Defendant at the residence; this personal knowledge eliminated the risk that deputies would search the wrong residence.  Eighth, and perhaps most importantly, both the Affidavit and Application and the Search Warrant contain a detailed physical description of the search residence – including the color of the trim, the roof, and the mail box post, the location of the mail box, the direction that the front door faces, and the nature of the construction – and a detailed description of the residence's location – including the side of the street on which it sits and its relation to intersecting and adjoining streets. See Jones, 208 F.3d at 608 (noting that the search warrant itself had listed the correct address to be searched and that the warrant "provided other, ample, descriptions of the location of [the defendant's] house," including its "relation to intersecting and adjoining streets and neighboring houses"); Stonerook, 134 Fed. Appx. at 984 (noting that "[t]he warrant affidavit accurately described [the defendant's] house"). The residence located at 186 S.W. 1st Court and detailed in the Description of Premises and Curtilage to be Searched is then referenced repeatedly throughout the Probable Cause section as the place from which Defendant had sold marijuana to the CI. When read in a commonsense and practical manner, therefore, the Affidavit and

Application contain more than sufficient facts from which a reviewing judge could find probable cause to search the premises located at 186 S.W. 1st Court. And as the Eleventh Circuit has made clear, an issuing judge's probable cause determination "is to be given great deference and is conclusive, if reasonable, absent arbitrariness." Sweeting, 933 F.2d at 964. Here, the issuing judge's determination was reasonable and clearly not arbitrary.

      B.      "Good Faith" Exception Would Mandate Evidence Not Be Suppressed

Yet, even if the Search Warrant were not supported by probable cause, the "good faith" exception to the exclusionary rule would mandate that the evidence recovered from Defendant's residence (and his subsequent statement) not be suppressed. Here, BSO deputies acted in reasonable reliance upon a judicially issued search warrant. And there is no evidence of any circumstances that might render the good faith exception inapplicable. See Leon exceptions supra at 11-12. Preliminarily, the undersigned notes that Defendant does not argue – and the undersigned does not find – that the issuing judge was misled by any false information or omissions in the search warrant affidavit, that the issuing judge's actions were anything other than detached and neutral, or that the warrant was so facially deficient that BSO deputies could not have reasonably presumed it to be valid. Rather, Defendant argues that the Search Warrant is so lacking in indicia of probable cause as to render official belief in its existence unreasonable.

The test in this Circuit for determining whether a warrant is so lacking in probable cause "is whether the officer acted in objective good faith under the circumstances." United States v. Taxacher, 902 F.2d 867, 871 (11th Cir. 1990) (emphasis in original). The Taxacher court explained that the focus in Leon was on the officer: "[T]he officer's reliance on the [judge's] probable-cause determination and on the technical sufficiency of the

warrant he issues must be objectively reasonable." Id. (quoting Leon, 468 U.S. at 922). Quoting Leon, Taxacher reiterated that the "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [judge's] authorization" and that "[i]n making this determination, all of the circumstances . . . may be considered." Taxacher, 902 F.2d at 871 (quoting Leon, 468 U.S. at 922 n.23) (emphasis added); accord United States v. Estrada, No. 1:06-CR-358-RWS-ECS, 2010 WL 6434088, at *3 (N.D. Ga. Aug. 2, 2010). Indeed, the Eleventh Circuit has specifically held that in determining whether an officer acted in good faith when relying upon an invalid warrant, the reviewing court may look outside the four corners of the search warrant affidavit. United States v. Martin, 297 F.3d 1308, 1318 (11th Cir. 2002).

Applying "a standard which is focused on a reasonably well-trained officer and is based on the totality of the circumstances," the undersigned concludes that the BSO affiant here "acted in objective good faith, and that the (second Search) [W]arrant was not so lacking in indicia of probable cause as to render official belief in the existence of probable cause entirely unreasonable." Taxacher, 902 F.2d at 872. The affiant had surveilled a marijuana transaction at the premises to be searched, house number 186 on the corner of S.W. 1st Court and S.W. 2nd Avenue. The affiant presented to a neutral judicial officer – a state court judge – an Affidavit and Application and a Search Warrant bearing the address 186 S.W. 2nd Avenue. When the affiant learned from other deputies that the 186 S.W. 2nd Avenue address is incorrect and that he correct address is 186 S.W. 1st Court, he promptly located a courthouse computer and revised the Description of the Premises both in the Affidavit and Application and in the Search Warrant to reflect an address of 186 S.W.

1st Court. But in the Probable Cause section of the Affidavit and Application, the affiant neglected to change the address in the one instance that it is identified by name; he inadvertently left it as 186 S.W. 2nd Avenue. Within fifteen to thirty minutes of having obtained the first Search Warrant, the affiant had returned to the same neutral judicial officer with the revised documents. The affiant explained the address error to the issuing judge, who then reviewed both the revised Application and Affidavit and the revised Search Warrant and signed the revised Search Warrant. The affiant then executed the revised (or second) Search Warrant at the premises located 186 S.W. 1st Court, which is the same premises at which he had previously surveilled the CI making the marijuana purchase from Defendant. Considering all of the circumstances, the affiant acted in objective good faith in executing the (second) Search Warrant. Accordingly, even if the (second) Search Warrant were not supported by probable cause, the Government would be entitled to the benefit of Leon's good faith exception.

IV.   CONCLUSION

In sum, the (second) Affidavit and Application for Search Warrant satisfies the Fourth Amendment's probable cause requirement. Employing a "realistic and commonsense approach," Miller, 24 F.3d at 1361, the undersigned finds that the (second) Affidavit and Application sets forth probable cause to believe that the CI purchased marijuana from Defendant at the search premises, 186 S.W. 1st Court. According the issuing judge the "high level of deference traditionally given to [judges] in their probable cause determinations," id., the undersigned further finds that the lone typographical error (referencing 186 S.W. 2nd Avenue) does not, on these facts, vitiate probable cause. As Stonerook declared, "Where it is clear which property was intended in the affidavit, a word

processing error does not render a warrant invalid." 134 Fed. Appx. at 984. Yet, even if the word processing error were to render the (second) Search Warrant invalid, the Leon good faith exception would mandate that the challenged evidence and the subsequent statement not be suppressed. Accordingly, the Motion to Suppress Physical Evidence and Statements (DE 26) should be DENIED.

For the foregoing reasons, therefore, the undersigned respectfully RECOMMENDS that the Motion to Suppress Physical Evidence and Statements (DE 26) be DENIED.

The parties will have seven (7) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable James I. Cohn, United States District Judge.[2] Failure to file objections timely shall bar the parties from a de novo determination by the district judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted

---

[2] Rule 4 of the Magistrate Judge Rules, Local Rules for the Southern District of Florida, requires that a party file any objections to a magistrate judge's report and recommendation with fourteen days of being served "or within such other time as may be allowed by the Magistrate Judge or District Judge." S.D. Fla. L. R. (Magistrate Judge Rule 4). Where exigencies exist, a court may shorten the time for filing objections. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (holding that trial court did not err in providing parties less than the [then-applicable] full ten-day period to file objections to the magistrate's report and recommendation where exigencies existed, stating that the [then-applicable] "[t]en days is a maximum, not a minimum"); Hispanic Counseling Center, Inc. v. Incorporated Village of Hempstead, 237 F. Supp. 2d 284, 290 (E.D.N.Y. 2002) (court may shorten time period for filing objections where exigencies exist). Exigencies exist in this case as the trial was previously scheduled for the period commencing October 31, 2011 (DE 25).

or adopted by the district court except upon grounds of plain error or manifest injustice. <u>See</u> 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140, 149 (1985); <u>Henley v. Johnson</u>, 885 F.2d 790, 794 (11th Cir. 1989).

DONE AND SUBMITTED at Fort Lauderdale, this 3rd day of November 2011.

_____
BARRY S. SELTZER
UNITED STATES MAGISTRATE JUDGE

Copies to:

Hon. James I. Cohn
United States District Judge

Timothy Day, Esq.
Assistant Federal Public Defender
Attorney for Defendant Delvin Woods

Strider Dickson, Esq.
Assistant United States Attorney